IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 5, 2026

## JOHNNY CURTIS SHEPPARD v. KYLA YVETTE SHEPPARD

**Appeal from the Circuit Court for Jefferson County**
No. 26645-II James L. Gass, Judge
———————————————————

**No. E2025-00899-COA-R3-CV**
———————————————————

This appeal arises out of a divorce proceeding. Appellant and appellee married in 2007. Appellee filed the current divorce action in the trial court on February 8, 2021. The parties entered into a reconciliation agreement suspending the divorce proceeding on July 24, 2023. The trial court set aside this agreement on July 19, 2024 at appellee's request. A trial was held on November 4, 2024. The trial court ordered the parties divorced on the ground of inappropriate marital conduct by appellant; divided the marital estate; entered a permanent parenting plan designating appellee as primary residential parent of the parties' minor children; and awarded appellee child support, transitional alimony, and attorney's fees. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;
Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which ANDY D. BENNETT and CARMA DENNIS MCGEE, JJ., joined.

Shelley S. Breeding and Madeline S. Copes, Knoxville, Tennessee, for the appellant, Johnny Curtis Sheppard.

Rebecca D. Slone, Dandridge, Tennessee, for the appellee, Kyla Yvette Sheppard.

## OPINION

### BACKGROUND

Johnny Curtis Sheppard ("Husband") and Kyla Yvette Sheppard ("Wife") married in 2007. Three children ("the Children") were born of the parties' marriage. Wife filed a complaint for divorce on February 8, 2021 in the Jefferson County Circuit Court (the "trial

court") alleging inappropriate marital conduct, specifically "overuse of alcohol and formerly drugs during the marriage." On March 22, 2021, Husband, then represented by counsel, filed an answer admitting to irreconcilable differences but denying inappropriate marital conduct, as well as a counterclaim for divorce alleging irreconcilable differences and, in the alternative, inappropriate marital conduct. Wife filed an answer to the counterclaim for divorce on March 24, 2021, likewise admitting to irreconcilable differences but denying inappropriate marital conduct.

The parties attended mediation on March 3, 2022, but did not settle the matter. On April 13, 2022, Wife filed an amended complaint requesting spousal support and attorney's fees. At some point before August 16, 2022, Wife filed petitions for orders of protection ("OPs") against Husband, which the trial court granted ex parte. The trial court consolidated the OP proceedings with the divorce action on August 16, 2022, and left the OPs in effect. On October 11, 2022, the trial court entered an order amending the ex parte OPs, ordering Husband to have no contact with Wife or the Children, and granting Wife exclusive possession of the marital home. On November 7, 2022, the trial court entered an order awarding Husband co-parenting time with the Children on two Saturdays during October 2022[1] to be supervised by a third party.

On November 8, 2022, the parties entered into an agreed Temporary Parenting Plan. The Temporary Parenting Plan (1) modified the ex parte OPs to allow for "limited social contact between the parties for the sole purpose of [Wife]'s presence for [Husband]'s coparenting with the [C]hildren"; (2) forbade Husband from driving with the Children or removing the Children from the marital residence; (3) granted Husband co-parenting time to be exercised at the marital residence on Sundays and one other mutually agreed-upon day each week; (4) required Husband to take a breathalyzer test and get a negative result for alcohol use before entering the marital residence for co-parenting time; (5) required Wife to remain in a different part of the marital residence during co-parenting time; (6) allowed Husband to attend the Children's extracurricular events in addition to the co-parenting time at the marital residence; (7) allowed Husband to be with the Children at the marital residence for two hours on Thanksgiving 2022 and for four hours on Christmas 2022; (8) required Husband to refrain from alcohol and drug use prior to and during co-parenting time; and (9) allowed for a mutually agreed-upon increase in the days and times Husband could see the Children if these co-parenting times "proceed in an appropriate manner."

On July 24, 2023, the parties filed an agreed order of reconciliation, which suspended the suit, dismissed all OPs, allowed the parties to resume living together, and relieved all attorneys as counsel of record for the respective parties. The order also provided that the suspension of the suit could "be revoked upon motion of either party or by order." On July 11, 2024, Wife filed a motion to set aside the reconciliation order,

---

[1] Notably, the month of October 2022 had already passed when this order was entered.

asserting that the attempted reconciliation had failed and that Wife was ready to proceed with the divorce. The motion was served via U.S. mail only to Husband and not to his prior counsel. On July 19, 2024, the trial court entered an order setting aside the order of reconciliation and stating that the "matter shall proceed accordingly." This order was also served via U.S. mail only to Husband.

The trial occurred on November 4, 2024, and Husband appeared pro se, as there had apparently been no communication between Husband and his former counsel from the end of reconciliation to the trial date. When the case was called, Husband requested a continuance to find counsel, which the trial court denied. The trial proceeded. There is no transcript of the proceedings in the record on appeal. Rather, both parties filed competing statements of evidence pursuant to Tennessee Rule of Appellate Procedure 24(c), and the trial court adopted Wife's statement in full.

Husband has a long-term substance abuse problem. At trial, Husband testified that he previously had an opiate addiction, and after coming off opiates, he began drinking alcohol. He further testified that he "spen[t] a significant amount of money on addictions during the marriage, even dipping into his [investment] and savings accounts[,]" and this spending "caused a financial crisis."

Husband went to great lengths to conceal his alcohol use. At trial, he "admitted to keeping alcohol in the lining of his truck[,] . . . . admitted he kept alcohol in . . . secret places around the house . . . where the [C]hildren could have found it[,]" and admitted he "used condoms to insert alcohol into his rectum to hide his usage from [Wife]." Wife found "the condoms . . . laying [sic] around the parties' home[,]" including "in the school room in their home where the [C]hildren could easily have found them." Wife also testified that she found a package of "CBD/THC gummies" in Husband's truck that looked like candy, which concerned her since it could have been misidentified as such by the Children.

Husband went to the Harmony Oaks rehab facility in June 2022 for a period of 19 days. According to records from Husband's stay at Harmony Oaks, he "reported to the staff he drank between one and a half to two fifths of alcohol per day." Husband also reported to staff that "the longest sobriety he had had was 2 weeks[,]" and "that drinking had negatively impacted his family." According to rehab records, Husband "had a history of failure to maintain any type of long term absence from psychoactive substances." When Husband left rehab, "he was sober for 4 days, then drank again[,]" and Husband testified that he had continuously drank "up to and including the date of the divorce." Wife testified that after his treatment at Harmony Oaks, Husband "got a DUI with alcohol and a gun in the vehicle in the middle of the day."

Husband also "admitted to the [rehab] staff that he had such anger issues that he was to the point he might hurt somebody[,]" and the rehab staff "found he was a danger to himself and others and that he needed a controlled environment." Wife testified to multiple

violent episodes by Husband.  Wife testified that Husband hit one of the Children with his shoulder, and Wife provided both testimony and photographic evidence showing that Husband drunkenly "destroyed Christmas decorations and the school room" while Wife took the Children to church, destroyed Wife's work materials, and burned Wife's clothing. Husband "slammed a door so hard it knocked decor off the wall" and threw "stuff around the house."  Husband took Wife's paperwork and phone and hid her jewelry.  Husband also placed cameras "all over the house" while refusing to tell Wife where they were and recorded her unknowingly while she was undressing.

Wife testified that although Husband "has been capable of parenting in the past[,]" he "is no longer capable due to his severe alcoholism."  Husband testified that his drinking prevented him from driving the Children in the afternoon and evenings.  In recent years, Wife drove the Children to and from school, to all dentist and doctor appointments, and to all sporting events.

The trial court entered a Final Decree of Divorce on November 22, 2024, incorporating by reference its November 7, 2024 "Findings and Opinion."  Regarding the division of the marital estate, the trial court found:

(a) The house and real property is awarded to [Wife].  The house has a value of $700,000.00, and the equity is determined by reducing the value by a HELOC loan of $49,000.00, and the balance of a primary mortgage of $339,000.00, and the original gift by [W]ife's family for land valued at $90,000.00.  This leaves equity of $111,000.00 to each party.

(b) The Court awards the marital home and land to [Wife], and she shall refinance the debt on the same into her name within six (6) months of the judgment in this case.  In the intervening time she shall be responsible for all loan payments on the home.  [Husband] shall sign all documents needed to give [W]ife access to the current mortgage company and the outstanding loan.  [Husband] shall also execute all documents needed to transfer ownership of the home to [Wife]. [Husband's] equity in the home of $111,000.00 shall be reduced by $19,730.00 in child support owed to [Wife]  for ten (10) months of non-support while he was out of the home. [Husband] failed to pay August, September and October mortgage payments totaling $10,000.00, and that shall become the duty of [Wife] to pay, and said $10,000.00 shall further reduce [Husband's] equity in the home. [Husband's] equity is also reduced by $3,000.00 for the Armada vehicle awarded hereby to [Husband].  [Husband's] equity with reductions equals $78,270.00, for which he shall hold a lien on the real property and house. This lien shall be inferior to any refinancing of the primary mortgage by [Wife] to accomplish the intent of the Court's orders.  This lien shall not be required to be paid by [Wife] until six (6) months have passed following the

youngest child turning eighteen (18) years of age or graduating from high school, whichever occurs later. If the home is sold before that date the lien shall be paid at the sale closing.

(c) The Court awards the parties['] mobile home to [Husband] along with his Suburu [sic] vehicle, the Honda Ridgeline vehicle, lawn mower, all personal property in his possession, and one-half (1/2) of the parties' household contents. [Husband] shall pay all debt owed on any personal property awarded to him.

(d) [Wife] is awarded her BMW vehicle and one-half (1/2) of the household contents along with personal property in her possession. She shall pay all debt owed on any property awarded to her.

(e) [Husband] is awarded $14,563.00 of [Wife's] 401K plan. The balance of the plan is awarded to [Wife]. [Husband's] award is reduced by his share of credit card expenses and school trip expenses, which is the responsibility of [Wife] to pay, if not yet satisfied.

(f) [Husband] shall be required to pay all [the C]hildren's outstanding medical bills as of November 4, 2024. Thereafter, the parties shall equally divide the same.

With respect to alimony, the trial court found that

[H]usband has much greater income and potential income than [Wife], and the marriage [which began] in 2007 has been long term. Therefore, there exists [Husband's] ability to pay alimony to [Wife]. Based on [Wife's] income as set forth on the Child Support Work Sheet, there exists a need by [Wife] for alimony. The Court having found the need for transitional alimony, awards the same to [Wife] from [Husband] in the sum of $1,500.00 per month for five (5) years. These payments shall begin on the first day of the month following entry of a judgment in this case.

Regarding the custody determination issue, the trial court stated that it

has considered the factors of [Tennessee Code Annotated section] 36-6-106 for Child Custody and finds [Wife] shall be the Primary Residential Parent of each child of the marriage with [Wife] granted initial parenting time of 365 days a year. This shall last for 12 months, and during this time [Husband] shall have four (4) supervised visits a month through Volunteer Services via Michael Stunzik [sic], which shall be coordinated between the parents. Throughout this time [Husband] shall have the right to contact [the

Children] as set forth in the Parenting Bill of Rights. After the first twelve (12) months [Husband] shall have parenting time overnight visits with the [C]hildren every other weekend. Before such visits he shall provide [Wife], through a test of her choosing, which [Husband] shall pay to have conducted, his blood alcohol level and usage. This test shall be performed close in time to the [C]hildren's visits. The Court expects during the initial year [Husband] will take all needed steps to achieve and maintain sobriety as this causes the Court great concern for the [C]hildren's safety and well-being. Factors weighing in [Wife's] favor for primary parenting pursuant to T.C.A. § 36-6-106 are the [C]hildren's need for stability, [Wife's] history of performing the majority of the parties' parenting responsibility, and her having the best potential to properly perform future parenting responsibilities. The Court has considered the moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the [C]hildren and finds [Wife] is clearly the proper person to do so. The Court also finds the other relevant factor weighing in [Wife's] favor to be [Husband's] long and continuing alcohol abuse occurring both in the presence of [Wife] and [the Children].

On the issue of attorney's fees, the trial court stated:

> (g) [Wife] is awarded her reasonable attorney fees in the sum of $10,000.00 from [Husband]. [Husband] shall be required to pay any attorney fee or attorney judgment he incurred in this litigation.
> (h) [Husband] shall also pay the court costs in this cause.

On December 17, 2024, Husband, through counsel, filed a "Motion to Alter or Amend or in the Alternative Set Aside Final Decree of Divorce." The trial court entered a modified final order on May 19, 2025, which only changed the final order "to the extent that [Husband] shall only be required to take a blood alcohol test of his breath prior to any visit set forth in the parenting plan order. However, [Wife] shall have the right to obtain periodic hair follicle tests on [Husband]." Husband timely appealed to this Court on June 13, 2025.

## ISSUES

Husband raises several issues on appeal, which we restate as follows:

1. Whether the trial court erred in denying Husband's motion for continuance.

2. Whether the trial court erred in its valuation of the marital estate.

3. Whether the trial court's division of the marital estate was inequitable.

- 6 -

4. Whether the trial court erred in its application of the factors contained in Tennessee Code Annotated section 36-5-121(i) when awarding alimony to Wife.

5. Whether the trial court erred in its application of the factors contained in section 36-6-106(a) in making its custody determination.

6. Whether the trial court erred in awarding Wife attorney's fees.

## DISCUSSION

### *Motion for continuance*

Whether to grant or deny a motion for continuance is within the discretion of the trial court. *In re Anna W.*, No. W2022-00657-COA-R3-PT, 2022 WL 17820763, at *3 (Tenn. Ct. App. Dec. 20, 2022) (citing *State Dep't of Child.'s Servs. v. V.N.*, 279 S.W.3d 306, 317 (Tenn. Ct. App. 2008)). Therefore, we review such a decision for an abuse of discretion. The abuse of discretion standard of review "reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives." *Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 305 (Tenn. 2020) (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Accordingly, "[u]nder the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to propriety of the decision made.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)). "Indeed, when reviewing a discretionary decision by the trial court, the 'appellate courts should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision.'" *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010) (quoting *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)). This presumption notwithstanding, "[a] trial court abuses its discretion when it causes an injustice by applying an incorrect legal standard, reaching an illogical decision, or by resolving the case 'on a clearly erroneous assessment of the evidence.'" *Id.* (quoting *Lee Med.*, 312 S.W.3d at 524).

The burden falls on the party seeking a continuance to show that the circumstances justify a continuance. *In re Rhyder C.*, No. E2021-01051-COA-R3-PT, 2022 WL 2837923, at *5 (Tenn. Ct. App. July 21, 2022) (citing *Osagie v. Peakload Temp Servs.*, 91 S.W.3d 326, 329 (Tenn. Ct. App. 2002)). The relevant factors when evaluating the circumstances include "(1) the length of time the proceeding has been pending, (2) the reason for the continuance, (3) the diligence of the party seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted." *Id.* (quoting *Nagarajan v. Terry*, 151 S.W.3d 166, 172 (Tenn. Ct. App. 2003)).

The agreed order of reconciliation entered July 24, 2023 relieved each party's counsel of record from their duty to continue representing their respective client. Husband argues that when the trial court set the order aside on July 19, 2024, the previously relieved attorneys were therefore reinstated as counsel of record for their respective client. However, notice of Wife's motion to set aside the order of reconciliation, the trial court's order granting Wife's motion, and notice of the trial date were sent only to Husband, not his former counsel of record. Husband's former counsel did not appear at trial. Husband argues that he was therefore "not a willing pro se litigant[,]" thus justifying a continuance to find counsel.

It is undisputed that Husband received copies of the motion, the subsequent order, and notice of the trial date. Despite Husband's knowledge of the impending trial date, the record is void of evidence that he attempted either to contact his former counsel or hire new counsel following the July 2024 motion and order. During the four months between the trial court setting aside the reconciliation order and the date of trial, Husband "had ample time to secure counsel of his choice." *Coakley v. Daniels*, 840 S.W.2d 367, 370 (Tenn. Ct. App. 1992). Husband relies upon *Wilder Wilder*, No. E2022-00990-COA-R3-CV, 2023 WL 4770877 (Tenn. Ct. App. July 27, 2023), in support of his contention that the circumstances in this case justify the continuance. However, the litigant's attorney in *Wilder* withdrew only five days before trial and the litigant requested a continuance, which the trial court denied. 2023 WL 4770877, at *6. On appeal, this Court concluded that the trial court abused its discretion in denying the requested continuance. *Id.* at *7. In contrast, Husband had almost four months to find new counsel and only requested a continuance after no one showed up the day of trial to represent him. This is far from the circumstances of the "unwilling pro se litigant" in *Wilder*.

Further, as there is no transcript of the trial, and the Statement of Evidence adopted by the trial court does not discuss the motion whatsoever, the record contains no evidence as to the proceedings or arguments presented at trial regarding the motion. "In the absence of a transcript or statement of the evidence, a presumption arises that there was sufficient evidence to support the trial court's judgment." *In re Est. of Henderson*, 121 S.W.3d 643, 647 n.5 (Tenn. 2003) (citing *Mfrs. Consol. Serv. v. Rodell*, 42 S.W.3d 846, 865 (Tenn. Ct. App. 2000)). Without the benefit of a transcript or statement of the evidence allowing us to know what happened with respect to Husband's motion for continuance, we must presume that there was sufficient evidence to support the trial court's denial of the motion. Moreover, we cannot disturb the trial court's ruling on the motion unless the record clearly shows an abuse of discretion by the trial court and prejudice to the party seeking the continuance. Given these presumptions, we conclude that the trial court did not abuse its discretion by denying Husband's motion for continuance.

*Valuation of the marital estate*

Valuation of the marital estate is a question of fact for the trial court and is presumed correct unless the evidence preponderates otherwise. *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987). The parties bear the burden of coming forward with "competent valuation evidence." *Owens v. Owens*, 241 S.W.3d 478, 486 (Tenn. Ct. App. 2007) (citations omitted). "When valuation evidence is conflicting, the court may place a value on the property that is within the range of the values represented by all the relevant valuation evidence." *Id*. (citations omitted).

Husband asserts that the trial court abused its discretion in adopting Wife's valuation of the marital home because "[t]he only evidence that Wife presented, was her own valuation[,]" which, Husband argues, does not constitute competent valuation evidence.[2] However, this Court has been clear that the trial court is permitted to "re[ly] on the parties' opinions regarding value when making its valuation determination." *Brown*, 577 S.W.3d at 214. Once the parties have presented differing property values, the trial court may adopt a valuation "that is within the range of the values represented by all the relevant valuation evidence." *Owens*, 241 S.W.3d at 486. "This is precisely what the trial court did in the instant action[,]" and nothing in the record on appeal preponderates against this valuation. *Brown*, 577 S.W.3d at 214. Accordingly, having carefully reviewed the record before us, we conclude that the evidence does not preponderate against the trial court's valuation of the marital home.

*Division of the marital estate*

After classifying and valuing marital property, a trial court must equitably divide it between the parties. *See* Tenn. Code Ann. § 36-4-121(a)(1); *Luplow v. Luplow*, 450 S.W.3d 105, 109 (Tenn. Ct. App. 2014) (citing *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001)). An equitable division of marital property does not require that the property be divided equally. *Luplow*, 450 S.W.3d at 109–10 (citing *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002)). Nor does it require that each party receive a share of every item classified as marital property. *Morton v. Morton*, 182 S.W.3d 821, 833–34 (Tenn. Ct. App. 2005) (citing *King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998)). The trial court has broad discretion in devising an equitable division of marital property. *Flannary v. Flannary*, 121 S.W.3d 647, 650 (Tenn. 2003). This Court will not overturn the trial court's determination unless "it is inconsistent with the statutory factors or lacks proper evidentiary support." *Trezevant v. Trezevant*, 568 S.W.3d 595, 607 (Tenn. Ct. App. 2018) (citing *Baggett v. Baggett*, 422 S.W.3d 537, 543 (Tenn. Ct. App. 2013)).

---

[2] We note that Husband, too, provided his lay opinion as to the marital home's valuation. "[W]e discern no significant distinction between Husband's and Wife's . . . methodologies in valuing the marital residence. Each party presented a lay opinion concerning the value of his or her own property, as permitted by Tennessee Rule of Evidence 701[.]" *Brown v. Brown*, 577 S.W.3d 206, 214 (Tenn. Ct. App. 2018).

In making its division, trial courts must consider all relevant factors found at Tennessee Code Annotated section 36-4-121(c). "[T]he division of marital property is not a mechanical process. Rather, the trial court should weigh the most relevant factors in light of the facts of each case." *Larsen-Ball v. Ball*, 301 S.W.3d 228, 234 (Tenn. 2010) (citations omitted).

Husband makes several arguments regarding multiple aspects of the trial court's division of marital property: the calculation of Husband's equity in the marital home, statutory interest for Husband's equity in the home, and the award of the mobile home and the Nissan Armada to Husband. We address each argument in turn.

### a. *Husband's equity in the marital home*

The trial court calculated Husband's equity in the marital home as follows: the court began with a home value of $700,000.00, then subtracted $49,000.00 for the HELOC loan, "the balance of a primary mortgage of $339,000.00," and $90,000.00 for the value of the land the home sat on, which was awarded to Wife, leaving $222,000.00 in total equity. The trial court then split this equity equally, awarding $111,000.00 each to Husband and Wife. The trial court then further reduced Husband's $111,000.00 equity award by subtracting $19,730.00 for child support owed to Wife, $10,000.00 for unpaid mortgage payments, and $3,000.00 for the Nissan Armada awarded to Husband. This left Husband with an equity award of $78,270.00 in the form of a lien on the home and real property. Husband argues that his equity in the marital home was erroneously calculated because the trial court deducted both the total balance of the mortgage and the $10,000.00 in unpaid mortgage payments. The $10,000.00 in unpaid mortgage payments, Husband argues, was already accounted for in the $339,000.00 mortgage balance, and thus should not have been deducted from his share of the equity of the home.

However, we note that Husband raises this argument for the first time in his reply brief on appeal. "Issues raised for the first time in a reply brief are waived." *Hughes v. Tenn. Bd. of Prob. & Parole*, 514 S.W.3d 707, 724 (Tenn. 2017) (citations omitted). "'A reply brief is limited in scope to a rebuttal of the argument advanced in the appellee's brief.' It would be fundamentally unfair to permit an appellant to advance new arguments in the reply brief, as the appellee may not respond to a reply brief." *Artist Bldg. Partners v. Auto-Owners Mut. Ins. Co.*, 435 S.W.3d 202, 220 n. 5 (Tenn. Ct. App. 2013) (quoting *Denver Area Meat Cutters & Emps. Pension Plan v. Clayton*, 209 S.W.3d 584, 594 (Tenn. Ct. App. 2006)). Therefore, Husband's arguments regarding the alleged miscalculation of his equity in the home are waived.

### b. *Post-judgment interest*

The trial court ordered that Husband receive his share of equity in the marital home (1) after the parties' youngest child graduates from high school or six months after he turns

eighteen, whichever is later, or (2) at closing if the home is sold before the aforementioned condition has occurred. Because Husband is unable to access his share of the home equity until some future date, Husband argues that Tennessee Code Annotated section 47-14-121 required the trial court to award him post-judgment interest on this inaccessible equity. This is a question of law, which we review de novo with no presumption of correctness. *See Snodgrass v. Snodgrass*, 295 S.W.3d 240, 245–46 (Tenn. 2009).

"Interest" is defined as "compensation for the use or detention of, or forbearance to collect, money over a period of time . . ." Tenn. Code Ann. § 47-14-102(8). "A party's right to postjudgment interest is based on that party's entitlement to use the proceeds of the judgment after the award." *Vooys v. Turner*, 49 S.W.3d 318, 322 (Tenn. Ct. App. 2001) (citing *W. Am. Ins. Co. v. Montgomery*, 861 S.W.2d 230, 232 (Tenn. 1993)). "[T]he allowance of interest is based upon statute, and this postjudgment interest statute is mandatory." *Id.* (citations omitted); *see* Tenn. Code Ann. § 47-14-122 ("Interest shall be computed on every judgment from the day on which the jury or the court, sitting without a jury, returned the verdict without regard to a motion for a new trial.").

The facts of this case are similar to those considered by this Court in another divorce action, *Williams v. Williams*, No. E1999-02750-COA-R3-CV, 2000 WL 816821 (Tenn. Ct. App. June 23, 2000). In *Williams*, the wife was awarded the marital home, and the husband was awarded $21,200.00 secured by a lien against the property. 2000 WL 816821, at *1. "The home was to be sold no later than the youngest child's eighteenth birthday and then the lien would be satisfied from the proceeds of the sale of the residence." *Id.* The husband argued that he should be awarded post-judgment interest on the deferred judgment; however, as the courts of this state have repeatedly held, "the rule is that the statutory interest does not begin to accrue until the party awarded judgment becomes entitled to the money." *Id.* Because the husband in *Williams* was "not entitled to use of the money until the house [was] sold," he was not entitled to post-judgment interest. *Id.* at *2.

Like the husband in *Williams*, Husband is not yet entitled to the use of the money he was awarded from the equity of the marital home. He is only entitled to utilize his share of the home equity under a certain set of conditions established in the trial court's judgment, and those conditions have not yet been met. Therefore, the trial court properly declined to award post-judgment interest to Husband.

### c. Mobile home and Nissan Armada

The trial court also awarded Husband a mobile home, which was situated on land awarded to Wife, and a Nissan Armada. Husband argues that both awards were "inequitable in light of the duration of the marriage, the parties' relative capacity to acquire other capital assets, and the parties' post-divorce economic circumstances."

First addressing the mobile home, Husband argues that because he "would have to pay to relocate the mobile home and purchase a place for the mobile home to [be] placed. . . . this award cost Husband more than [it's] worth." Husband further argues that this award was inequitable because "the mobile home generated income for the parties as they rented it out to a tenant[,]" and the trial court did not "allocate which party would be awarded said income."

Tennessee Code Annotated section 36-4-121(f)(1) provides that the trial court has the discretion to "make a distributive award of money or other property to supplement, facilitate or effectuate a distribution of marital property." Accordingly, whether to make an award offsetting the costs associated with relocating and situating the mobile home was in the trial court's discretion. The trial court chose not to make any award of money or other property to offset these costs, and the record supports this decision. Even setting aside the fact that Husband has a significantly higher income than Wife, Husband acknowledged that the mobile home has been and can be rented out to generate income. This income could partially or fully offset the costs associated with relocating and situating the mobile home, which undercuts Husband's argument that the award of the mobile home "cost Husband more than [it's] worth."

Additionally, while Husband argues that the past income generated from renting out the mobile home was not allocated, the trial court awarded Husband and Wife the cash assets in each of their respective bank accounts. Husband provides no citation to the record to suggest that this rental income was not included in the cash assets divided and awarded by the trial court.

Next, turning to the Nissan, Husband argues that this award was inequitable because "at the time of trial, the vehicle was being driven by the parties' eldest child[,]" and "both parties intended and understood that this vehicle 'belonged' to that child." Nevertheless, the trial court awarded the Nissan to Husband despite Husband having what he describes as "essentially no co-parenting time[.]" In stating that the Nissan "belonged" to the child, it is unclear if Husband is arguing that the Nissan is the child's property. However, by only challenging the trial court's allocation of the Nissan, rather than its classification as marital property, Husband inherently acknowledged that the vehicle is not the property of the parties' eldest child. Nothing in the trial court's judgment prevents the current arrangement from continuing. As the owner of the Nissan, Husband is free to allow his eldest child to continue using the vehicle.

We discern no abuse of discretion in the trial court's rulings concerning the marital estate. We affirm the division of the parties' marital property.

*Alimony*

Husband next argues that the trial court abused its discretion in awarding Wife transitional alimony. The Tennessee Supreme Court has explained that

> trial courts in Tennessee have broad discretion to determine whether spousal support is needed and, if so, to determine the nature, amount, and duration of the award. *See Gonsewski* [*v. Gonsewski*], 350 S.W.3d [99,] 105 [(Tenn. 2011)]; *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000). Because a trial court's "decision regarding spousal support is factually driven and involves the careful balancing of many factors," *Gonsewski*, 350 S.W.3d at 105 (footnote omitted), the role of an appellate court is not to second guess the trial court or to substitute its judgment for that of the trial court, but to determine whether the trial court abused its discretion in awarding, or refusing to award, spousal support. *Id*.

*Mayfield v. Mayfield*, 395 S.W.3d 108, 114 (Tenn. 2012). "When a trial court determines whether and to what extent alimony is appropriate, it must apply the statutory factors enumerated in [Tennessee Code Annotated] section 36-5-121(i)." *Law v. Law*, No. E2021-00206-COA-R3-CV, 2022 WL 1221084, at \*20 (Tenn. Ct. App. Apr. 26, 2022).

Husband argues that the trial court abused its discretion by not applying all of the factors set out in section 36-5-121(i). Specifically, Husband cites factors related to the parties' relative earning capacities, obligations, needs, financial resources, levels of education and training, ages, mental and physical conditions, and separate assets; the duration of the marriage; the division of the marital assets; and the standard of living of the parties established during the marriage. *See* Tenn. Code Ann. § 36-5-121(i). However, "each of these factors must be considered *when relevant* to the parties' circumstances[.]" *Gonsewski v. Gonsewski*, 350 S.W.3d at 110 (emphasis added). "[W]e are not required to interpret the trial court's silence with respect to factors that were not particularly weighty as a refusal or failure to consider those factors." *K.B.J. v. T.J.*, 359 S.W.3d 608, 613 (Tenn. Ct. App. 2011). Tennessee courts have highlighted two factors as the most important for the trial court to consider: "the disadvantaged spouse's need and the obligor spouse's ability to pay." *Gonsewski*, 350 S.W.3d at 110 (quoting *Riggs v. Riggs*, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007)). In this case, the trial court explicitly addressed both of these factors:

> The Court finds specifically [H]usband has much greater income and potential income than [W]ife, and the marriage in 2007 has been long term. Therefore, there exists [H]usband's ability to pay alimony to [W]ife. Based on [W]ife's income as set forth on the Child Support Work Sheet, there exists a need by [W]ife for alimony.

The record supports the trial court's implicit determination that these factors were the most relevant in this case. As the trial court found, the evidence reflects that Husband has historically earned more income than Wife and had a greater capacity for earning income than Wife. Husband was working again as of the time of trial, although he refused to tell Wife where he worked. Also relevant to this issue were the trial court's designation of Wife as the Children's primary residential parent and the trial court's finding that the parties' marriage was long term. The trial court did not abuse its discretion by declining to explicitly address each factor found in section 36-5-121(i).

After a thorough review of the record, we conclude that the trial court's ruling as to transitional alimony for Wife should be affirmed. The factual findings underpinning the trial court's analysis are supported by the record, and the trial court applied the pertinent statutory factors in a reasoned manner. Viewing the decision in the light most favorable to the trial court, as the standard of review requires, *see Gonsewski*, 350 S.W.3d at 105–06, we discern no abuse of discretion.

***Custody***

Next, Husband argues that the trial court abused its discretion in devising the parties' custody arrangement. Husband notes that Wife receives 365 days of parenting time for twelve months, whereas Husband has four supervised visits a month through an agency. After the first twelve months, Husband has overnight visitation every other weekend. Husband notes further that he must provide Wife with a test showing his blood alcohol level and usage close to the time of his visit and that he is responsible for the cost of the test. In essence, Husband asserts that these conditions are too onerous.

Additionally, Husband argues that the trial court failed to consider each of the best interest factors set forth in Tennessee Code Annotated section 36-6-106(a), which a trial court must consider when making a custody determination. Husband contends that the trial court erred by considering only the Children's need for stability; which parent performed most of the parenting responsibilities; the potential to perform future parenting responsibilities; the moral, physical, mental, and emotional fitness of each parent as it relates to their ability to parent the Children; and Husband's history of alcohol abuse. According to Husband, the trial court misapplied or overlooked multiple factors that should weigh in his favor, such as each parent's past and potential for future performance of parenting responsibilities; the disposition of each parent to provide the Children with food, clothing, medical care, education, and any other necessary care; which parent was the primary caregiver; the love, affection, and emotional ties existing between each parent and the Children; and the disruptive effect of the custody arrangement on the Children's lives to that point.

The Tennessee Supreme Court has repeatedly emphasized

> the *limited* scope of review to be employed by an appellate court in reviewing a trial court's factual determinations in matters involving child custody and parenting plan developments. *Armbrister*[ *v. Armbrister*], 414 S.W.3d [685,] 692-93 [(Tenn. 2013)]. . . . Indeed, trial courts are in a better position to observe the witnesses and assess their credibility; therefore, trial courts enjoy broad discretion in formulating parenting plans. *Id*. at 693 (citing *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007)). "Thus, determining the details of parenting plans is 'peculiarly within the broad discretion of the trial judge.'" *Id*. (quoting *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988)). Appellate courts should not overturn a trial court's decision merely because reasonable minds could reach a different conclusion. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

*C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017) (emphasis in original).

Here, the trial court did not make factual findings corresponding to each statutory best interest factor. However, that is not dispositive. While trial courts are required to consider each applicable factor found at section 36-6-106(a), "there is no statutory requirement that the court list every applicable factor along with its conclusion as to how that particular factor impacted the overall custody determination[.]" *Grissom v. Grissom*, 586 S.W.3d 387, 393 (Tenn. Ct. App. 2019) (quoting *Murray v. Murray*, No. M2009-01576-COA-R3-CV, 2010 WL 3852218, at *8 (Tenn. Ct. App. Sept. 28, 2010)). Additionally, "the absence of an explicit discussion of each factor does not mean that they were not considered." *Keisling v. Keisling*, 196 S.W.3d 703, 723 (Tenn. Ct. App. 2005). In *Keisling*, this Court noted that the trial court addressed the "overriding issue" of that case, which was "the effect on the children of [the m]other's and [g]randparents' persistent allegations against [the f]ather and their relentless quest for evidence of sexual abuse." *Id*.

In its order, the trial court in this case stated that it considered each of the statutory best interest factors and ultimately found that the factors favored Wife. The trial court made factual findings corresponding to best interest factors regarding the stability of the parent-child relationship; the parents' past and potential for future performance of parenting duties; the degree to which the parent has been primary caregiver; the parties' fitness to parent; and the importance of continuity for the Children. The trial court found these factors weighed in Wife's favor based on

> the [C]hildren's need for stability, [Wife's] history of performing the majority of the parties' parenting responsibility, and her having the best potential to properly perform future parenting responsibilities. The Court has considered the moral, physical, mental and emotional fitness of each parent

as it relates to their ability to parent the [C]hildren and finds [Wife] is clearly the proper person to do so.

In addition, the trial court identified what clearly is the overriding consideration bearing on custody in this matter—namely, "[Husband's] long and continuing alcohol abuse occurring both in the presence of [Wife] and [the Children]."

Husband argues in his brief that he has successfully parented the Children in the past despite his struggles with alcohol. He observes that, two days before trial, he traveled to a soccer match out of state with one of the Children without any supervision or incident. However, the issue is not whether Husband has ever done anything good or responsible with the Children. He has. The issue is the risk going forward posed by Husband's alcoholism. Husband reported consuming staggeringly high amounts of alcohol for extended periods of time. He drank up to and including the day of trial. He has gone to great lengths to conceal his dependency. He has displayed erratic behavior and violence in connection with his drinking. Husband received a DUI after undergoing treatment. In short, Husband has a severe problem with alcohol.

Under section 36-6-106(a), courts are to fashion custody arrangements that maximize a parent's participation in the life of his or her child. Nevertheless, section 36-6-106(a) provides further that a parent's maximum participation is subject to the child's best interest. Given Husband's severe problem with alcohol, the trial court's decision to carefully limit and regulate his visitation with the Children was reasonable. The record reveals erratic and sometimes violent behavior by Husband. The trial court clearly sought to shield the Children from the direct consequences of Husband's alcoholism as best it could without utterly closing off Husband's ability to visit the Children. Under the facts of this case and given the severity of Husband's alcohol abuse, requiring Husband to test for blood alcohol level and usage before visiting the Children was a sensible measure for the trial court to include. The trial court made findings corresponding to the best interest factors it deemed relevant, and the evidence does not preponderate against these findings. We discern no abuse of discretion by the trial court in its custody determination.

### Attorney's fees

Finally, Husband argues that the trial court erred in awarding Wife her attorney's fees. Regarding the award of attorney's fees as alimony in solido in divorce cases, this Court has stated:

> A trial court's decision to award attorney fees lies soundly within its discretion, and we will not reverse absent an abuse of that discretion. *Owens*[,] 241 S.W.3d [at] 495 . . . . As with any alimony award, the trial court must balance the various factors enumerated in Tennessee Code Annotated § 36-5-121(i). *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct.

App. 1992). The most important factors to consider are the need of the economically disadvantaged spouse and the ability of the obligor spouse to pay. [*Owens*, 241 S.W.3d] at 495.

*Collins v. Collins*, No. M2008-00930-COA-R3-CV, 2009 WL 1272275, at *5 (Tenn. Ct. App. May 5, 2009) (footnote omitted). "[W]here the spouse seeking such an award [of attorney's fees] has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony." *Gonsewski*, 350 S.W.3d at 113.

Husband argues that Wife did not lack resources to pay her attorney's fees as she paid them with funds from the HELOC loan, and Husband was responsible for paying half of that loan's debt. However, Husband provided no citations to the record supporting the assertion that Wife paid her attorney using funds from the HELOC loan. Even assuming arguendo that Husband's assertions are correct, his argument still falters. This Court addressed a similar scenario in *Collins*, wherein the wife paid her attorney "using money she took from the value of the home using the parties' equity line of credit." 2009 WL 1272275, at *5. The husband in *Collins* "essentially assert[ed] that because he [was] at least partially responsible for paying the $3,000.00 debt incurred by [the w]ife to pay her attorney fees, the additional attorney fee award allows [the w]ife to double dip, forcing [the h]usband to pay a portion of [the w]ife's attorney fees twice." *Id*. This Court concluded that the trial court properly awarded the wife her attorney's fees and that there was no double dipping because "the parties' home was marital property[,] the equity line of credit on the home was marital debt[,]" and the trial court divided the debt on the marital home equally between the parties. *Id*. at *5. We further noted that "[w]hile she did pay her attorney out of the borrowed funds, her debt on these funds still exist." *Id*.

In the present matter, the trial court found among other things that Husband has a much greater income and potential for income than Wife; that Husband has the ability to pay Wife alimony; and that Wife has a need for alimony. The evidence does not preponderate against these findings. In view of the trial court's findings as to the parties' relative financial circumstances, including their need and ability to pay, the trial court's decision to award Wife her attorney's fees as alimony in solido was reasonable irrespective of the HELOC loan. The record supports the trial court's ruling, and we discern no abuse of discretion. We affirm the trial court's award of attorney's fees to Wife.

## CONCLUSION

The judgment of the trial court is hereby affirmed. Costs on appeal are assessed to the appellant, Johnny Curtis Sheppard, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE

- 17 -